1  (*Counsel of record on next page*)

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  LOVELY NAKOOKA and ELVA REYES,        No. 3:17-cv-03955-JD
    individually and on behalf of all others
12  similarly situated,                    **NOTICE OF JOINT MOTION AND JOINT
                                           MOTION FOR:**
13                Plaintiffs,
                                           **(1)  PRELIMINARY APPROVAL OF REVISED
14      vs.                                      PROPOSED SETTLEMENT;**

15  DOLLAR TREE STORES, INC., and          **(2)  CONDITIONAL CERTIFICATION OF
    DOES 1-10, inclusive,                       SETTLEMENT CLASS;**
16
                  Defendants.              **(3)  APPOINTMENT OF CLASS
17                                              REPRESENTATIVES, CLASS COUNSEL,
                                                AND SETTLEMENT ADMINISTRATOR;**
18
                                           **(4)  APPROVAL OF FORMS OF NOTICE TO
19                                              CLASS OF SETTLEMENT AND ELECTION
                                                NOT TO PARTICIPATE IN SETTLEMENT;
20                                              AND**

21                                         **(5)  SETTING HEARING FOR FINAL
                                                APPROVAL OF SETTLEMENT**

22                                         **MEMORANDUM IN SUPPORT OF JOINT
                                           MOTION**

23                                         Date:      December 13, 2018
                                           Time:      10:00 a.m.
24                                         Courtroom: 11
                                                      450 Golden Gate Avenue, 19th Fl.
25                                                    San Francisco, California  94102
                                           Judge:     Hon. James Donato
26
                                           Complaint filed:   July 13, 2017
27                                         FAC filed:         July 12, 2018
                                           Trial date:        April 6, 2020
28

1  RANDALL B. AIMAN-SMITH (Cal. State Bar No. 124599)
   REED W.L. MARCY (Cal. State Bar No. 191531)
2  HALLIE VON ROCK (Cal. State Bar No. 233152)
   CAREY A. JAMES (Cal. State Bar No. 269270)
3  BRENT A. ROBINSON (Cal. State Bar No. 289373)
   AIMAN-SMITH & MARCY
4  7677 Oakport Street, Suite 1150
   Oakland, CA 94621
5  Telephone:  (510) 817-2711
   Facsimile:  (510) 562-6830
6  ras@asmlawyers.com
   rwlm@asmlawyers.com
7  hvr@asmlawyers.com
   caj@asmlawyers.com
8  bar@asmlawyers.com

9  Attorneys for Plaintiffs
   Lovely Nakooka and Elva Reyes

10

11  JEFFREY D. WOHL (Cal State Bar No. 096838)
    RYAN D. DERRY (Cal State Bar No. 244337)
12  PAUL A. HOLTON (Cal State Bar No. 313047)
    PAUL HASTINGS LLP
13  101 California Street, 48th Floor
    San Francisco, California 94111
14  Telephone:  (415) 856-7000
    Facsimile:  (415) 856-7100
15  jeffwohl@paulhastings.com
    ryanderry@paulhastings.com
16  paulholton@paulhastings.com

17  Attorneys for Defendant
    Dollar Tree Stores, Inc.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

*Page*

Table of Authorities ............................................................................................................ iii

I.    INTRODUCTION/SUMMARY OF ARGUMENT ................................................. 2

II.   PROCEDURAL HISTORY ...................................................................................... 3

III.  THE REVISED SETTLEMENT ............................................................................. 4

    A.    Settlement Class. ............................................................................................ 4

    B.    Settlement Consideration. .............................................................................. 5

    C.    Settlement Payments. ..................................................................................... 5

    D.    Settlement Payment Procedure. ..................................................................... 6

    E.    Release by Class Members and Plaintiffs. ..................................................... 7

IV.   THE REVISED PROPOSED SETTLEMENT ADDRESSES THE COURT'S
      CONCERNS ............................................................................................................ 8

    A.    Class Member Recovery. ................................................................................ 8

    B.    Class Release. ................................................................................................. 9

    C.    Settlement Administration Costs and Class Notice. ....................................... 9

    D.    Second Distribution of Checks. .................................................................... 10

    E.    Timing of Objections and Cashing of Checks. ............................................. 10

    F.    Class Counsel Attorneys' Fees and Litigation Costs. .................................. 10

    G.    Class Representative Service Payments ........................................................ 10

V.    THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED ..... 10

    A.    Preliminary Approval of the Settlement Is Appropriate. .............................. 10

        1.    The Settlement Was the Product of Informed, Non-Collusive Negotiations ....... 12

        2.    The Proposed Settlement Has No "Obvious Deficiencies." ................................ 12

        3.    The Settlement Falls Within the Range of Possible Approval. .......................... 12

            a.    Liability Is Vigorously Contested and the Settlement Provides
                Class Members Substantial Monetary Relief. ........................................... 13

                (1)    Plaintiffs Contend That Dollar Tree Faces Liability ................... 13

                (2)    Dollar Tree Denies Any Liability. ............................................... 14

                (3)    The Settlement Provides Class Members with Substantial
                      Relief. ......................................................................................... 16

            b.    The Class Release Is Appropriate Given Plaintiffs' Claims. .................. 16

    B.    Conditional Certification of a Settlement Class Is Appropriate. ................... 16

        1.    The Numerosity Requirement Is Met. ................................................................ 17

LEGAL_US_W # 95626747.11

# TABLE OF CONTENTS

*(cont'd)*

*Page*

2.    For Purposes of Settlement Only, the Commonality and Typicality Requirements Are Met. ................................................................................ 17

3.    Adequacy of Representation. .................................................................... 18

4.    Class Certification Is Proper Under Rule 23(b)(3). ................................. 18

C.    The Notice Plan Is Fair and Adequate. ............................................................... 18

D.    Rust Consulting, Inc., Should Be Appointed as the Settlement Administrator. ............. 19

E.    Proposed Schedule for Approval of the Settlement. ........................................... 20

VI.    CONCLUSION ................................................................................................................ 20

LEGAL_US_W # 95626747.11

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Churchill Village, LLC v. General Electric,*
    361 F.3d 566 (9th Cir. 2004) ...................................................................................18

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ............................................................................10, 11

*Cypress v. Newport News General and Nonsectarian Hospital Ass'n,*
    375 F.2d 648 (4th Cir. 1967) ...................................................................................17

*Fry v. Hayt, Hayt & Landau,*
    198 F.R.D. 461 (E.D. Pa. 2000).....................................................................16, 17, 18

*Gay v. Waiters' & Dairy Lunchmen's Union,*
    489 F. Supp. 282 (N.D. Cal. 1980), *aff'd,* 694 F.2d 531 (9th Cir. 1982) ...............17

*Greer v. Dick's Sporting Goods, Inc.,*
    2017 U.S. Dist. LEXIS 57165 (E.D. Cal. Apr. 12, 2017)........................................14

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ..........................................................................11, 17, 18

*Lapin v. Goldman Sachs & Co.,*
    254 F.R.D. 168 (S.D.N.Y. 2008) .............................................................................17

*Mendoza v. U.S.,*
    623 F.2d 1338 (9th Cir. 1980) .................................................................................18

*North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.,*
    27 Cal. App. 4th 1085 (1994) ..................................................................................11

*In re Tableware Antitrust Litig.,*
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..............................................................11, 12

*In re Traffic Exec. Ass'n,*
    627 F.2d 631 (2d Cir. 1980)....................................................................................11

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ...................................................................................10

*Wal Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)...........................................................................................15, 16

**Statutes, Rules and Regulations**

Cal. Bus. & Prof. Code
    §§ 17200 *et seq.* .................................................................................................3, 7

Cal.Civ. Code § 1542 ...................................................................................................8

Cal. Lab. Code
    § 2698 *et seq.* .......................................................................................................3
    § 2802..................................................................................................................13
    § 2802(a) .............................................................................................................13

IWC Wage Order No. 7-2001
    § 9(A)...................................................................................................3, 7, 13, 14

LEGAL_US_W # 95626747.11

1

**NOTICE OF JOINT MOTION AND JOINT MOTION**

2
To the Clerk of the Court and all interested parties:

3
PLEASE TAKE NOTICE that on December 13, 2018, at 10:00 a.m., or as soon thereafter as

4
counsel may be heard, in Courtroom 11 of this Court, located at 450 Golden Gate Avenue, 19th Floor,

5
San Francisco, California, before the Honorable James Donato, plaintiffs Lovely Nakooka and Elva

6
Reyes and defendant Dollar Tree Stores, Inc. ("Dollar Tree"), will and hereby do move for preliminary

7
approval of their revised proposed class settlement; conditional certification of the settlement class;

8
approval of the class notice; appointment of plaintiffs as the class representatives, Randall B. Aiman-

9
Smith, Reed W.L. Marcy, Hallie Von Rock, Carey A. James, and Brent A. Robinson of Aiman-Smith

10
and Marcy as the class counsel, and Rust Consulting, Inc., as the settlement administrator; and setting of

11
the final approval hearing.

12
The parties bring this motion on grounds that, following the Court's August 23, 2018, denial of

13
the prior proposed settlement previously submitted, and after continued arms'-length negotiations, the

14
parties have reached a revised settlement. The terms of the revised settlement reflect a *50% increase in*

15
*the maximum settlement amount* and *lower proposed costs and fees* than what previously was submitted

16
to this Court, yielding a Class Member recovery 80% higher than the prior settlement and sufficient to

17
purchase shirts for the tenure of the average Class Member. The revised settlement is a fair, reasonable

18
and adequate settlement that is within the range of final approval.

19
This motion is based on this notice; the following memorandum in support of the motion; the

20
accompanying Declaration of Reed W. L. Marcy in Support of Motion for Preliminary Approval of

21
Revised Proposed Settlement, Declaration of Ryan D. Derry in Support of Motion for Preliminary

22
Approval of Revised Proposed Settlement, and [Proposed] Order (1) Preliminarily Approving Revised

23
Proposed Settlement; (2) Conditionally Certifying Settlement Class; (3) Appointing Class

24
Representatives, Class Counsel, and Settlement Administrator; (4) Approving Form of Notice to Class

25
of Settlement; and (5) Setting Hearing for Final Approval of Settlement; the Court's record of this

26
matter, all matters of which the Court may take notice; and such oral and documentary evidence

27
presented at the hearing on the motion.

28
///

## MEMORANDUM IN SUPPORT OF JOINT MOTION

## I.    INTRODUCTION/SUMMARY OF ARGUMENT

After the Court declined to grant preliminary approval of their prior class settlement (*see* ECF 30), plaintiffs Lovely Nakooka and Elva Reyes and defendant Dollar Tree Stores, Inc. ("Dollar Tree"), re-engaged in arms'-length negotiations and reached agreement on a revised settlement which they believe addresses the Court's concerns.  Specifically, the revised settlement:

- *increases the Maximum Settlement Amount by 50%*, from $900,000 to $1,350,000;
- *decreases the proposed Class Representative Service Payments* from $1,000 to $750 each;
- *decreases the proposed Class Counsel Attorneys' Fees and Expenses Payment* from $240,000 to $215,000, with Fees now representing less than 16% of the Maximum Settlement Amount;
- *decreases the anticipated Settlement Administrator Fees Payment* from $111,635 to $99,962, which is the lowest among seven bids the parties received; and
- makes other changes to the notice and approval process to meet the Court's concerns.

These changes will produce settlement shares for Class Members of $15.81, *about 80% more than before*, and enough to cover the cost of two or three shirts which, for the average Class Member, would have been enough for his or her tenure at Dollar Tree.

As revised, the parties' proposed settlement is fair and reasonable and falls within the range for final approval.  As the Court will recall, plaintiffs allege that they and other California store employees of Dollar Tree were required to purchase and wear clothing—a green shirt and black pants—that constituted a "uniform" and required reimbursement under California law.  However:

- Half of plaintiffs' proposed class accepted an arbitration agreement with a class action waiver.  (Nevertheless, the proposed settlement covers all putative class members, including those party to the arbitration agreement.)
- Dollar Tree maintains that its policy does not require employees to only wear a green shirt and black pants, but also allows employees to wear a white shirt and khaki or tan pants, thus allowing employees a range of options that do not constitute a uniform under

California law.

- ▪ In the course of the litigation Dollar Tree collected declarations from dozens of putative class members affirming that they understood they did not have to wear a green shirt and black pants to work and did not do so.

Given these considerations, the parties' revised proposed settlement represents a fair and reasonable compromise of hotly disputed claims and deserves preliminary approval.

## II.    PROCEDURAL HISTORY

On July 13, 2017, plaintiffs filed a putative class action alleging that throughout the relevant time period, Dollar Tree has had a policy that store employees must wear only a green, collared shirt and black pants; that this clothing constitutes a uniform under California law; and that Dollar Tree violated California law by failing to reimburse employees for the cost of this clothing. (ECF No. 1.) Based on this allegation, plaintiffs brought causes of action under various California Labor Code sections; Industrial Welfare Commission Wage Order 7-2001, section 9(A); and California Business and Professions Code section 17200 for failure to indemnify for clothing expenses. (ECF No. 1.) Through the operative First Amended Complaint, filed July 12, 2018, plaintiffs also assert a claim for civil penalties with respect to other allegedly aggrieved employees under the California Labor Code Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.* (ECF 23.)

On February 19, 2018, the parties participated in a full-day mediation with Antonio Piazza, who specializes in complex employment disputes. (ECF No. 19-1 ¶ 11.) At the conclusion of the mediation, the parties were too far apart. Mr. Piazza requested that the parties allow him some time to arrive at an appropriate mediator's proposal.

On February 23, 2018, Mr. Piazza made a mediator's proposal for a complete settlement of all claims, which all parties subsequently accepted. The parties then worked extensively together to finalize the details of a settlement, which were contained in a settlement agreement fully executed by them on June 19, 2018. (ECF 19-1, ¶ 12, Exh. A.) Among other things, the prior settlement provided for a Maximum Settlement Amount of $900,000; Class Representative Service Payments of $1,000 each; Class Counsel's Fees and Expenses Payment of up to $240,000; and an expected per-Class Member Settlement Share of $8.80. (*Id.*)

The Court, however, denied preliminary approval of the prior Settlement on August 23, 2018. (ECF 30.)  In denying preliminary approval, the Court identified seven areas of concern: (i) the proposed Class Member recovery was too low "in light of plaintiffs' valuation of the case and the circumstance that the legal and factual issues in the case are far from settled[;]" (ii) the class release was "worded in a way that makes it potentially far broader" than the uniform claim at issue in the operative complaint; (iii) settlement administration costs appeared high and U.S. mail notice only was "unreasonable and unduly restrictive; email notice plus a dedicated website should be considered[;]" (iv) unclaimed funds should be distributed to claimants in a second round of checks before being submitted to a *cy pres* recipient; (v) settlement "[c]lass members should have at least 75 days to object and/or opt out of the settlement, and 180 days to cash their checks[;]" (vi) "[t]he proposed reservation of up to 25% of the settlement for attorneys' fees is unwarranted in these circumstances[;]" and (vii) "[t]he Court is also skeptical that the named plaintiffs should receive 'incentive' payments that would vastly exceed the per capita recovery by putative class members."  (ECF 30.)

Following the Court's order, the parties re-engaged in arms'-length negotiations.  At all times, the parties' negotiations have been adversarial and non-collusive.  (Declaration of Reed W. L. Marcy in Support of Joint Motion for Preliminary Approval of Revised Proposed Class Action Settlement ("Marcy Decl."), ¶ 22.)  By agreement executed by all parties on October 15, 2018, the parties have agreed to a revised settlement.  (*Id.*, ¶ 22, Exh. A ("Revised Settlement").)  As explained below, the terms of the Revised Settlement address each of the concerns articulated by the Court in rejecting the Prior Agreement.

## III.  THE REVISED SETTLEMENT

### A.  Settlement Class.

As before, the Revised Settlement covers the following individuals: "all non-exempt hourly store employees who worked for Dollar Tree in the State of California at any time from July 13, 2013, through the date [of preliminary approval]," excluding "any individuals who already have resolved the claims asserted in the Action, whether by settlement or adjudication."  (Revised Settlement, § I.C.)  A total of approximately 64,151 current and former employees encompass the Class.  (Marcy Decl., ¶ 24.) As before, the half of the putative class that accepted an arbitration agreement with a class action waiver

are nevertheless included in the Settlement Class.

**B.    Settlement Consideration.**

Under the Revised Settlement, Dollar Tree now has agreed to pay $1,350,000 (the "Maximum Settlement Amount"), an increase of 50% from the prior settlement's $900,000.  (Revised Settlement § III.A.)

**C.    Settlement Payments.**

Under the Revised Settlement, plaintiffs now have agreed to seek $750 each—down from $1,000 before—as their Class Representative Service Payments.  (Revised Settlement, § III.C.1.)  Class Counsel now have agreed to seek $215,000—down from $240,000 before—for their Class Counsel Fees and Expenses Payment.  (*Id.*, § III.C.2.)  This brings their requested fees to less than 16% of the Maximum Settlement Amount—down from 25% before.

The anticipated Settlement Administrator fees are $99,962, about 10% lower than the $111,635 proposed before.  This is the lowest bid among seven bids received.  (Marcy Decl., ¶ 17.)

In addition to these amounts, the Maximum Settlement Amount will cover the payment to the California Labor and Workforce Development Agency of $18,750 as its share of the settlement of PAGA penalties (the same as before) and all Settlement Shares paid to Class Members.  (Revised Settlement, § III.A, C.)  Given that the parties have negotiated a substantial increase in the Maximum Settlement Amount and decrease in potential fees and costs to be deducted prior to distribution, the recovery for the 64,151 Class Members is approximately $15.81 per person.  This value, alone, reflects an increase of almost 80% over the calculated recovery under the prior settlement.

The Revised Settlement is a non-claims made, non-reversionary settlement.  The Settlement Shares will be mailed to Class Members, without the need for Class Members to submit claim forms.

The parties have also agreed to several provisions that could result in even larger recoveries to Class Members.  First, the Revised Settlement provides that based on mailing the Class Notice and subsequent skip-tracing, should the Settlement Administrator be unable to confirm a Class Member's address, rather than sending out a check that will not be delivered, his or her Settlement Share will be distributed equally to all Class Members whose mailing addresses are confirmed by the Settlement Administrator.  (Revised Settlement, § III.B.4.)  The purpose is to reduce the number of undeliverable

1  checks and uncashed funds and postage waste in futile mailings.  For example, if the Settlement

2  Administrator were unable to confirm addresses for five percent of the Class Members, the recovery for

3  the 60,943 Class Members whose addresses were confirmed would increase to $16.60 per person.

4  (Marcy Decl., ¶ 31.)

5        Second, the Revised Settlement also permits the Court to decide whether a second distribution of

6  uncashed funds is appropriate.  (Revised Settlement, § III.E.10.)  Rust Consulting, Inc., the parties'

7  proposed Settlement Administrator, has bid a second distribution of settlement checks at $44,238.  That

8  means that if, for example, 10% of Class Members do not cash the checks received, after administration

9  costs, the second distribution of funds to Class Members would total less than $1.00 per Class Member.

10  (Marcy Decl., ¶ 32.)  In that circumstance, the Court might decide that a second distribution is

11  unwarranted, but it would retain the power to order it.  The Revised Settlement provides that, following

12  the Court-approved distribution process, any portion of the Net Settlement Amount not sent to Class

13  Members in a second distribution will be paid to Dress for Success, or another charity mutually agreed

14  upon by the parties and approved by the Court.  (Revised Settlement, § III.E.10.)

15        **D.**    **Settlement Payment Procedure.**

16        Upon approval of the Settlement by the Court, Dollar Tree will provide to the Settlement

17  Administrator within 45 days an electronic database containing all Class Member names and other

18  relevant information.  (Revised Settlement, § III.E.2.a.)

19        Within 15 days after receiving the Class Members' data, the Settlement Administrator will mail a

20  post-card Class Notice that contains communications in both English and Spanish and directs recipients

21  to a website with additional information regarding the Settlement, including the completed Revised

22  Settlement Agreement, a long-form notice (in English and Spanish), these preliminary approval papers,

23  any relevant orders from the Court, and the motion for final approval and related papers, once filed.

24  (Revised Settlement, § III.E.2.b.)  Use of a postcard Class Notice addresses the Court's concerns about

25  the cost of settlement administration.  If a larger, full-sized Class Notice were mailed, the cost of

26  administration would go back up by another $16,500 or so, placing the cost higher than it was before.

27  (Marcy Decl., ¶ 17.)

28        If a Class Notice is returned due to an incorrect address, the Settlement Administrator will search

for a more current address and re-mail a Class Notice within 10 days. (Revised Settlement, § III.E.2.c.) Class Members will have 75 days from mailing of the postcard notice to file an objection with this Court or submit a signed election not to participate in the Settlement. (*Id.*, § III.E.3.) An election not to participate in the Settlement need not be in a specific form to be valid; it need only identify the Class Member who is choosing to exclude himself or herself from the Settlement and make clear that is the Class Member's election. (*Id.*)

Should the Court grant final approval, the Settlement Administrator will issue checks that reflect an equal distribution of the Net Settlement Amount to all Class Members whose addresses it can confirm. (Revised Settlement, § III.B., D.) For example, if a Class Notice is returned as undeliverable and no updated address can be located for a specific Class Member, his or her address will not be deemed confirmed. The Settlement Administrator will also issue a check to the LWDA for its share of the settlement of the claim for PAGA penalties. (*Id.*, § III.C.3.)

The Class Members will have 180 days to cash their checks. (Revised Settlement, § III.E.10.) As noted above, to the extent there are uncashed checks but the cost of a second distribution would exhaust all or most of the proceeds, the money can be distributed to Dress for Success or another charity approved by the Court. (*Id.*, § III.E.10.) The Court will decide whether a second distribution of uncashed funds is appropriate. (*Id.*)

### E.    Release by Class Members and Plaintiffs.

In exchange for the Maximum Settlement Amount, Class Members will release, from July 13, 2013, up to the date of final approval, Dollar Tree and each of its former and current parent companies, subsidiaries, and affiliated corporations and entities, and each of their respective former and current employees, officers, directors, agents, attorneys, shareholders, fiduciaries, other service providers, and related persons and entities, and assigns (the "Dollar Tree Released Parties") from any and all known and unknown claims based on the allegation that Dollar Tree requires employees to wear prescribed clothing at work without reimbursement. These claims include, but are not limited to, the claims asserted by plaintiffs in the action under (1) the California Labor Code; (2) Industrial Welfare Commission Wage Order 7-2001, section 9(A); (3) California Business and Professions Code section 17200 *et seq.* (the "UCL"); and (4) PAGA (collectively, the "Class Members' Released Claims").

(Revised Settlement, § III.F.2.)  The language regarding the Class Members' Released Claims is express that the claims released are only those based on the allegations and claims made in the First Amended Complaint.  The proposed release provides that Class Members agree to a waiver of rights under California Civil Code section 1542 only as to those specified claims.  (*Id*.)

Plaintiffs have agreed to a broader release than the Class Members' Released Claims, including all known and unknown claims they have or may have against the Dollar Tree Released Parties, of every nature and description whatsoever, up to the date the Court's approval of the Settlement Agreement is Final.  (Revised Settlement, §§ III.F.1-2.)  This general release of claims includes any and all known or unknown contract, tort, statutory, common law, constitutional, discrimination, public policy, retaliation, wrongful discharge and other claims of any type whatsoever, to the fullest extent such claims are releasable by law, arising out of plaintiffs' employment with Dollar Tree.  (*Id*.)  Plaintiffs agreed to a general waiver of their rights under California Civil Code section 1542 to not release any unknown claims, as well as to waive any right to future employment with Dollar Tree.  (*Id*., §§ III.F.1, 4.)

## IV.   THE REVISED PROPOSED SETTLEMENT ADDRESSES THE COURT'S CONCERNS

The Revised Settlement addresses all of the Court's concerns that led it to deny preliminary approval of the prior settlement.

### A.   Class Member Recovery.

The Court opined that under the prior settlement, the proposed Class Member recovery was too low "in light of plaintiffs' valuation of the case and the circumstance that the legal and factual issues in the case are far from settled."  (ECF 30.)  By increasing the Maximum Settlement Amount by 50% to $1,350,000, decreasing the Class Counsel Fees and Expenses Payment by $25,000 and the Class Representative Service Payments by $250 each, and capping the costs of settlement administration to $99,962, the Revised Settlement boosts the Class Member recovery from $8.80 to $15.81, an 80% increase.  And overall, the Maximum Settlement Amount represents 25% of the total estimated value of the class claims, which are fiercely contested.  (Marcy Decl., ¶ 29.)

These Settlement Shares represent a meaningful recovery for Class Members.  They worked, on average, about 2.5 shifts per week over six months total.  (Marcy Decl., ¶ 29.)  Thus, assuming *arguendo*, that a Class Member needed to purchase a green *or* white shirt to meet Dollar Tree's dress

options, he or she would not have needed a large number of shirts. If one were to assume a Class Member would want a clean shirt for every shift and would perform weekly laundering, that would be an average of two to three shirts. Moreover, if worn only once a week, it is reasonable to assume the same shirts could be used throughout the average six-month tenure. The anticipated Settlement Share under the Revised Settlement of $15.81 would be sufficient to purchase these shirts. Men's and women's green and white polo shirts currently can be purchased from major retailers for less than $10. (Declaration of Ryan D. Derry in Support of Motion for Preliminary Approval of Revised Proposer Settlement ("Derry Decl."), ¶¶ 3-6, Exhs. A-L (listing current prices for men's and women's white and green polo shirts at Amazon, Kmart, and Walmart).) For example, Kmart currently sells men's white polo shirts for $6.99, men's green polo shirts for $7.99, women's white polo shirts for $3.97, and women's green polo shirts for $3.97. (*Id.*, Exhs. E-H.) Indeed, a green Dollar Tree logoed polo shirt (unisex) can be purchased for $9.90. (*Id.*, ¶ 7, Exh. M.) Thus, the estimated recovery for each Class Member ($15.81) is equivalent to reimbursement for a reasonable value of approximately two to three shirts.

### B.    Class Release.

The Court felt that the class release was "worded in a way that makes it potentially far broader" than the uniform claim at issue in the operative complaint. The Revised Settlement uses a clarified class release that tracks the allegations and claims in plaintiffs' First Amended Complaint.

### C.    Settlement Administration Costs and Class Notice.

The Court felt the settlement administration costs appeared high. The Revised Settlement caps the settlement administration costs at $99,962, about $11,000 or 10% less than before. To achieve this lower figure, the Class Notice will be a postcard mailed to all Class Members that directs them to a dedicated website established by the Settlement Administrator (addressing another Court concern). The website will display, in English and Spanish, all of the settlement documentation. In addition, the Class Notice will refer Class Members to PACER to obtain information directly from the case docket. The Court expressed interest in class notice being given by means of e-mail, but Dollar Tree does not have e-mail addresses for the class.

///

LEGAL_US_W # 95626747.11

1

### D.    Second Distribution of Checks.

The Court expressed interest in having uncashed checks distributed to Class Members in a second round of checks before being submitted to a *cy pres* recipient.  The parties are concerned that this may be economically infeasible due to the cost of a second mailing (*see* Marcy Decl., ¶ 32), but the Revised Settlement provides that it will be done if the Court so directs.  Otherwise, uncashed checks will be donated to Dress for Success, or another charity mutually agreed upon by the parties, subject to the Court's approval.

### E.    Timing of Objections and Cashing of Checks.

The Court directed that Class Members should have at least 75 days to object or opt out of the settlement, and 180 days to cash their checks.  The Revised Settlement so provides.  (Revised Settlement, §§ III.E.3, 10.)

### F.    Class Counsel Attorneys' Fees and Litigation Costs.

The Court felt that a Class Counsel attorneys' fees award of up to 25% of the settlement was excessive.  Under the Revised Settlement, Class Counsel will seek $215,000 in attorneys' fees and litigation costs, representing less than 16% of the Maximum Settlement Amount.

### G.    Class Representative Service Payments.

The Court was skeptical of the proposed Class Representative Service Payments.  Under the Revised Settlement, the payments have been reduced by 25%, from $1,000 to $750 each.

## V.    THE MOTION FOR PRELIMINARY APPROVAL SHOULD BE GRANTED

### A.    Preliminary Approval of the Settlement Is Appropriate.

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *See Newberg on Class Actions* 4th (2002) ("*Newberg*"), § 11.41 (and cases cited therein); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  A class action, however, may not be dismissed, compromised, or settled without the approval of the court.  Fed. R. Civ. P. 23(e).

Judicial proceedings under Rule 23, Federal Rules of Civil Procedure, have led to defined procedures and specific criteria for settlement approval in class action settlements, described in the

*Manual for Complex Litigation, Third* (Fed. Judicial Center 1995) ("*Manual*") § 30.41. The *Manual*'s settlement approval procedure describes three distinct steps:

> (1)    Preliminary approval of the proposed settlement at an informal hearing;
>
> (2)    Dissemination of mailed and/or published notice of the settlement to all affected Class Members; and
>
> (3)    A "formal fairness hearing," or final settlement approval hearing, at which Class Members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Id.*, § 30.41. The procedure, commonly used by federal courts and endorsed by the leading class action commentator, Professor Herbert Newberg, safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests. *See Newberg*, § 11.22 *et seq.*

The decision to approve or reject a proposed settlement is committed to the trial court's sound discretion; a court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within the range of possible approval, and thus whether notice to the class of the settlement terms and conditions and the scheduling of a formal fairness hearing is worthwhile. To grant preliminary approval of this class action settlement, the court need only find that the settlement falls within the range of possible final approval, also described as "the range of reasonableness." *See, e.g., North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*, 27 Cal. App. 4th 1085, 1089-90 (1994); *In re Traffic Exec. Ass'n*, 627 F.2d 631, 633-34 (2d Cir. 1980); *see also* 4 *Newberg*, § 11.25. In sum, preliminary approval of a settlement and notice to the proposed class is appropriate: "[i]f [1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval…." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

The Settlement proposed by the parties meets this test.

### 1. The Settlement Was the Product of Informed, Non-Collusive Negotiations.

The Settlement was reached after informed, arm's-length negotiations between the parties following the mediation with an accomplished mediator. (Marcy Decl., ¶¶ 11, 22.) The prior settlement was based on a mediator's proposal made four days after a full day meditation in which the parties exchanged data and information before and during mediation and zealously detailed their respective positions. (ECF 19-1, ¶ 11.) After the Court denied preliminary approval of the prior settlement, the parties re-engaged in negotiations. (Marcy Decl., ¶ 22.) The details of the Revised Settlement Agreement were then reached after several weeks of negotiation. (*Id.*) As such, the Settlement is the product of non-collusive negotiations.

### 2. The Proposed Settlement Has No "Obvious Deficiencies."

The Settlement is non-reversionary and substantial. The Settlement provides for a payment of $1,350,000 by Dollar Tree, which is, as discussed below, a significant amount given the value of the claims made by plaintiffs. (Settlement Agreement, § III.A; Marcy Decl., ¶¶ 25, 33.) The Settlement Share for each Class Member who receives a check will be the same. Each Class Member who does not elect to be excluded from the Settlement will be directly mailed the monetary benefit without the need to submit a claim form. (Settlement Agreement, § III.B.1.) The parties agree that both the Class Representative Payments and the Class Counsel Attorneys' Fees Payment are appropriate, and regardless they are subject to Court approval at the Final Approval hearing. (*Id.*, §§ III.C.1-2.)

### 3. The Settlement Falls Within the Range of Possible Approval.

The Settlement presented herein falls well within the range of possible approval. To evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080. Following review of plaintiffs' clothing purchase receipts and applicable law and statutory penalties, plaintiffs' counsel determined that the value of class wage and reimbursement claims with a likelihood of prevailing to be approximately $5,500,000. (Marcy Decl., ¶ 29.) The Settlement here represents nearly 25% of the total estimated value of these claims despite Dollar Tree's vigorous contestation of liability and arbitration agreement. The Settlement should be

approved because it confers a substantial benefit on Class Members, while proceeding with litigation would impose significant risk with no guarantee of increased benefits.  (*Id.*, ¶ 33.)

### a.  Liability Is Vigorously Contested and the Settlement Provides Class Members Substantial Monetary Relief.

Dollar Tree contests liability in this action, is represented by zealous counsel, and is prepared to vigorously defend this Action.  Plaintiffs' counsel conducted a thorough investigation into the facts of this class action and diligently pursued an investigation of Class Members' claims against Dollar Tree. (Marcy Decl., ¶¶ 8-9.)  As discussed below, liability is hotly contested.

### (1)  Plaintiffs Contend That Dollar Tree Faces Liability.

Plaintiffs' claims are premised on California Labor Code section 2802 and Wage Order 7-2001, section 9(a).  Specifically, under California law, an employer must "indemnify his or her employees for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  Cal. Lab. Code § 2802(a).  Wage Order 7-2001, section 9(A), then defines a "uniform", requiring reimbursement, to include "apparel and accessories of distinctive design or color." (*Id.*)

Here, plaintiffs allege that Dollar Tree's dress code requires employees to wear only a green (any shade) collared-shirt and black pants, which constitutes a "uniform"—by specifying a specific color (green/black) and specific design (collared shirt of a specific color/long pants of a specific color)—and necessitates reimbursement.  (ECF No. 23 ¶¶ 17-18.)

Plaintiffs acknowledge that Dollar Tree's policy purports to provide that Dollar Tree's California employees also have the option of wearing a white shirt and khaki or tan pants, which, Dollar Tree argues, would not constitute a uniform under the California Division of Labor Standards Enforcement ("DLSE") Manual.  Plaintiffs acknowledge the Manual explains that an employer may lawfully require employees to wear clothing that is "generally usable in the occupation" without paying for that clothing. *See* DLSE Enforcement Manual § 45.5.5 (Request for Judicial Notice, Exh. A).  However, plaintiffs contend that Dollar Tree's argument is unavailing as a defense for at least two reasons.  First, plaintiffs believe that the white shirt option is illusory and is not, in fact, a component of Dollar Tree's dress code. Second, even if Dollar Tree's dress code provides the option of a white shirt, the dress code still

1  prescribes a uniform.

2  **(2)    Dollar Tree Denies Any Liability.**

3  Dollar Tree vigorously denies liability.

4  First, Dollar Tree disputes plaintiffs' allegations regarding its dress code. Dollar Tree contends

5  that from 2010 through the relevant time period, Dollar Tree has at all times maintained a dress code

6  policy in California that provides employees with a choice for their top: they may wear *either* a green

7  shirt *or* a white shirt, and they may wear *either* a Dollar Tree logoed shirt they can buy *or* a Dollar Tree

8  apron supplied by the store for free. For example, if an employee chose to wear a white shirt, he or she

9  could wear an apron supplied by Dollar Tree for free. As for bottoms, employees may wear *either*

10  black*,* khaki *or* tan pants (or, for that matter, skirts, shorts, or capris). (Marcy Decl., ¶ 7.) Dollar Tree

11  contends this dress code has been continuously available through Dollar Tree's intranet and employees

12  are informed and trained on it. Demonstrating that, prior to mediation, Dollar Tree collected dozens of

13  declarations from Dollar Tree employees across California. Those declarations, from a cross-section of

14  managers and associates, showed that employees generally learned of the dress code options either

15  during the interview process or their first day of employment. (Derry Decl., ¶ 2.) Moreover, employees

16  understood and frequently chose to wear different clothing consistent with the underlying dress options.

17  (*Id.*) Specifically, as to tops, employees testified they understood they were not compelled to wear only

18  green, as plaintiffs alleged, and would wear tops of white or other colors. (*Id.*)

19  Given the options available, Dollar Tree maintains that its California Dress Code does not

20  establish a "uniform" that must be reimbursed under California law. As set forth above, the applicable

21  Wage Order 7-2001, section 9(A), defines a "uniform" to include "apparel and accessories of distinctive

22  design or color." But, the DLSE has acknowledged that an employer *may* require employees to wear

23  clothing that is "generally usable in the occupation" without paying for that clothing. DLSE

24  Enforcement Manual § 45.5.5. The Statement of Basis for the 1980 iteration of what is now Wage

25  Order No. 7-2001 expressly lists "*white shirts*, *dark pants* and black shoes and belts, all of unspecified

26  design," as examples of clothing that "generally [is] usable in the occupation." (*Id.*, § 45.5.5 (emphasis

27  supplied).) Indeed, in April 2017, the court recognized generally, in *Greer v. Dick's Sporting Goods,*

28  *Inc.*, 2017 U.S. Dist. LEXIS 57165, at *29 (E.D. Cal. Apr. 12, 2017), that an employer need not pay for

-14-

LEGAL_US_W # 95626747.11

clothing "such as white shirts, dark pants, and black shoes and belts, all of unspecified design." Furthermore, DLSE Opinions Letters and the DLSE Enforcement Manual also provide that if an employer allows multiple clothing options (as Dollar Tree contends it does)—including one that is "generally usable" in the occupation—an employee cannot "thrust obligation onto an employer" by choosing to wear clothing that arguably is not generally usable. *See* DLSE Opinion Letter 1991.02.13; s*ee also* DLSE Enforcement Manual § 45.5.4. Accordingly, Dollar Tree contends that the clothing options employees have had available to them does not mandate clothing of a "distinctive design or color," requiring reimbursement.

Second, Dollar Tree contends that plaintiffs would be unable to proceed on a classwide basis because half of the putative class, including plaintiff Nakooka, accepted an arbitration agreement as a condition of hire. (Marcy Decl., ¶ 7.) The arbitration agreement states that any claim related to their employment will be brought in arbitration "on an individual basis only, and not on a class or collective basis." (*Id.*) If the litigation proceeded, the putative class would be cut in half, as would the potential recovery.

Third, Dollar Tree contends that the remaining 46% of the putative class who did not execute an arbitration agreement will likely be unable to meet the rigorous analysis at class certification to demonstrate that (1) there are questions that can be resolved with common proof; (2) common questions predominate over individualized inquiries; (3) plaintiffs' claims are typical of those of other putative class members; (4) a class action would be manageable; and (5) a class action is a superior mechanism for resolving the alleged claims. *See* Fed. R. Civ. P. 23(a), (b)(3); *Wal Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011).

Dollar Tree contends that plaintiffs cannot identify a uniform policy or practice that caused alleged injury to the putative class. For example, plaintiffs complain that Dollar Tree's California dress code required that they wear green shirts and black pants; however, as discussed above, Dollar Tree contends that the dress code did not so require. To the extent plaintiffs allege that the dress code was enforced differently than written, Dollar Tree contends that this would be anecdotal and not subject to class treatment, especially given Dollar Tree's evidence that managers and employees understood that employees did not have to wear green shirts and black pants. Furthermore, Dollar Tree contends that

1    assuming every employee incurred expenses by having to purchase clothing to meet the dress code—

2    regardless of whether they did—could result in persons with no alleged injury recovering damages and

3    penalties.  Dollar Tree contends that it would deny it due process and undermine the instrument of class-

4    wide resolution of disputes to assume that every employee incurred expenses.  *See Wal-Mart Stores, Inc.*

5    *v. Dukes*, 564 U.S. 338, 350 (2011) (holding that class-wide resolution requires plaintiff to "demonstrate

6    that the class members have suffered the same injury" (internal quotation marks and citations omitted)

7    (emphasis supplied)).

8                                **(3)    The Settlement Provides Class Members with Substantial
                                         Relief.**

9            In light of these risks for both parties, the Settlement provides plaintiffs with substantial recovery

10   relative to the claims, while mitigating their risks if the matter were to proceed.  (Marcy Decl., ¶¶ 10, 33;

11   see also § IV.A., *supra*.)  As such, the Settlement is fair, reasonable, adequate, and is in the best interest

12   of the Class Members in light of all known facts and circumstances, including the risk of the significant

13   delay.  (Marcy Decl., ¶¶ 10, 33.)  The Settlement is also in the best interest of judicial efficiency in this

14   case, as it obviously eliminates a lengthy and intense class action lawsuit from this court's calendar.

15   (*Id.*, ¶ 33.)

16                        **b.    The Class Release Is Appropriate Given Plaintiffs' Claims.**

17           As described above, as part of the Settlement, Class Members will release all claims relating to

18   the facts pled in the complaint.  (Revised Settlement, §§ III.E.3.c, III.F.2.)  These released claims

19   appropriately track the breadth of plaintiffs' allegations in the action and the Settlement does not

20   release unrelated claims that class members may have against Dollar Tree.  Regardless, Class Members

21   have the right to opt-out of the Settlement altogether by following election not to participate procedures

22   provided for in the notice.  (*Id.*, § III.E.3.c.)  If they do so, they will not release their claims, but, of

23   course, also will not share in the recovery.

24               **B.    Conditional Certification of a Settlement Class Is Appropriate.**

25           Pursuant to Rule 23(c)(1), Federal Rules of Civil Procedure, the Court may "make a conditional

26   determination of whether an action should be maintained as a class action, subject to final approval at a

27   later date."  *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (citing Fed. R. Civ. P.

28   23(c)(1)).    Conditional approval of the class is appropriate where the plaintiff demonstrates

(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation; and one of the three requirements of Rule 23(b) also is met. Conditional certification of the settlement class is appropriate here as all the Rule 23 requirements are met.

### 1.    The Numerosity Requirement Is Met.

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd*, 694 F.2d 531 (9th Cir. 1982). No specified number of members of class is needed to maintain class action. *See, e.g., Cypress v. Newport News General and Nonsectarian Hospital Ass'n*, 375 F.2d 648 (4th Cir. 1967). However, numerosity is generally presumed for purposes of class action certification when the proposed class would have at least 40 members. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168 (S.D.N.Y. 2008).

Here, the count of approximately 64,151 similarly situated Class Members satisfies the numerosity requirement. (Marcy Decl., ¶ 24.)

### 2.    For Purposes of Settlement Only, the Commonality and Typicality Requirements Are Met.

Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement has been construed permissively; not all questions of law and fact need to be common. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, plaintiffs allege that plaintiffs' claims involve common questions of both fact and law regarding Dollar Tree's alleged failure to abide by state wage and hour law—specifically as it relates to reimbursement of expenses, and Dollar Tree does not dispute this for the purposes of the Settlement only. (Marcy Decl., ¶ 6.)

Furthermore, "Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, *supra*, 198 F.R.D. at 468. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, *supra*, 150 F.3d at 1020. Plaintiffs contend, and for purposes of the Settlement only Dollar Tree does not dispute, that plaintiffs' respective claims are essentially identical to all other non-exempt, hourly Dollar Tree workers in California and their claims are typical of such workers with the same common issues. (Marcy Decl., ¶ 6.)

### 3. Adequacy of Representation.

To meet the adequacy of representation requirement in Rule 23(a)(4), plaintiffs must show: "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, *supra*, 198 F.R.D. at 469. The adequacy of representation requirement is met here because plaintiffs have the same interests as the remaining members of the Settlement Class, there is no conflict between the named plaintiffs' claims and those of the other Class Members, and plaintiffs are represented by competent counsel who have experience in litigating dozens of wage-and-hour class action and representative cases. (Marcy Decl., ¶ 35.)

### 4. Class Certification Is Proper Under Rule 23(b)(3).

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification is proper under one of the three requirements of Rule 23(b). Here, the parties agree for purposes of the Settlement only that certification of the Class is appropriate under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and…a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

### C. The Notice Plan Is Fair and Adequate.

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, *supra*, 150 F.3d at 1025. A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. U.S.*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the proposed Class Notice (Exhibit C to the Settlement) and the manner of notice is "the best notice practicable," as required under Rule 23(c)(2)(B). All Class Members can be identified, and the Class Notice will be mailed directly to each Class Member at his/her last known address and to updated addresses as necessary. (Revised Settlement, § III.E.2.b.) The Class Notice adequately informs Class Members of the litigation and the Settlement and directs them regarding how to review additional

information, including a dedicated website that contains additional documentation related to the Settlement.  (*Id.*, Exh. D.)  Given the number of Class Members, the proposed post-card Class Notice is the most efficient and lowest cost option for informing Class Members about this lawsuit and their rights under the Settlement.

Specifically, "[w]ithin 45 days after the District Court enters its order granting Preliminary Approval of the Settlement, Dollar Tree will provide to the Settlement Administrator an electronic database for the Class Members containing, for each Class Member, the Class Member's name, employee identification number, last known address, and Social Security number." (Revised Settlement, § III.E.2.a.)  The Class Notice will be mailed by the Settlement Administrator within fifteen (15) days following Dollar Tree's delivery of the Class Members' data.  (*Id.*, § III.E.2.b.)  The Settlement Administrator will attempt to locate any Class Members whose Notice is returned as undeliverable.  (*Id.*, § III.E.2.c.)  Class Members will have 75 days, from the mailing of the Notice to file an objection to the Settlement with this Court or opt-out.  (*Id.*, § III.E.3.a, c.)  Not later than 35 days prior to the final approval hearing, the Settlement Administrator will submit a declaration describing efforts made to locate all Class Members.  (*Id.*, § III.E.2.e.)

In sum, the procedures set forth in the Settlement provide the best possible notice to the Class Members.

**D.    Rust Consulting, Inc., Should Be Appointed the Settlement Administrator.**

After obtaining seven bids from various experienced settlement administrators, the parties have agreed upon and propose that the Court appoint Rust Consulting, Inc. ("Rust"), to serve as the settlement administrator.  (Marcy Decl., ¶ 17.)  Not only is Rust very experienced and well-respected for administrating large wage and hour class action settlements, but it submitted the lowest bid.  (*Id.*)  Rust has quoted fees and costs for settlement administration to be $99,962 for distribution of the Class Notice and single-mailing of checks.  (*Id.*)  Plaintiffs' counsel will provide an updated settlement administration expense estimate at the time the parties file the motion for final approval of the Settlement.  (*Id.*)

///

///

///

**E.    Proposed Schedule for Approval of the Settlement.**

The parties propose the following schedule for approval of the Settlement:

| Date | Event |
|------|-------|
| 12/13/2018 | Preliminary Approval hearing (all dates that follow assume Preliminary Approval is granted on this date) |
| 01/28/2019 | Dollar Tree to provide to Settlement Administrator with a spreadsheet containing Class Member contact information (45 days after Preliminary Approval) |
| 02/12/2019 | Settlement Administrator to mail Class Notice to all Class Members (15 days after receiving Class Member information from Dollar Tree) |
| 04/29/2019 | Last day for Class Members to file with the Court objections regarding the Settlement (75 days after Settlement Administrator mails Class Notice to all Class Members) |
| 04/29/2019 | Last day for Class Members to submit a valid election not to participate in Settlement (75 days after Settlement Administrator mails Class Notice to all Class Members) |
| 05/13/2019 | Date by which Settlement Administrator will provide parties with a list of all Class Members who submitted timely and valid elections not to participate in the Settlement (14 days after the deadline for submission of elections not to participate in Settlement) |
| 06/12/2019 | Date by which Class Counsel will submit its motion for final approval of Settlement, class representative fees and class counsel's attorneys' fees and expenses |
| [July/August] 2019 | Proposed Final Approval and Fairness Hearing |

## VI.    CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court grant this motion in its entirety and enter an order: (1) conditionally certifying the settlement class; (2) granting preliminary approval of the Settlement; (3) appointing plaintiffs as the class representatives; (4) appointing plaintiffs' counsel as class counsel; (5) approving and directing the mailing of the class notice and related materials; (6) appointing Rust as the settlement administrator; and (7) adopting the parties' proposed schedule for final approval.

///

1      Dated: October 23, 2018.       RANDALL B. AIMAN-SMITH
REED W. L. MARCY
2                                       HALLIE VON ROCK
CAREY A. JAMES
3                                       BRENT A. ROBINSON
AIMAN-SMITH & MARCY
4

5                                       By:     */s/ Reed W. L. Marcy*
6                                                 Reed W. L. Marcy
Attorneys for Plaintiffs
7                                          Lovely Nakooka and Elva Reyes

8      Dated: October 23, 2018.       JEFFREY D. WOHL
RYAN D. DERRY
9                                         PAUL A. HOLTON
PAUL HASTINGS LLP
10

11                                        By:     */s/ Jeffrey D. Wohl*
12                                             Jeffrey D. Wohl
Attorneys for Defendant
Dollar Tree Stores, Inc.

13                    **Attestation Pursuant to Local Civil Rule 5-1(i)(3)**

14         Pursuant to Local Civil Rule 5-1(i)(3), I attest that concurrence in the filing of the document has

15 been obtained from all signatories to this filing. I declare under penalty of perjury that the foregoing is

16 true and correct.

17      Dated: October 23, 2018.       */s/ Jeffrey D. Wohl*
18                                               Jeffrey D. Wohl