1    (*Counsel listed on next page*)

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   LOVELY NAKOOKA and ELVA REYES,          No. 3:17-cv-03955-JD
     individually and on behalf of all others
12   similarly situated,                     **NOTICE OF JOINT MOTION AND JOINT**
                                             **MOTION FOR FINAL APPROVAL OF CLASS**
13                        Plaintiffs,         **ACTION SETTLEMENT; MEMORANDUM IN**
                                             **SUPPORT OF JOINT MOTION**
14        vs.
                                             Date:          July 18, 2019
15   DOLLAR TREE STORES, INC., and           Time:          10:00 a.m.
     DOES 1-10, inclusive,                    Courtroom:     11
16                                                           450 Golden Gate Avenue, 19th Fl.
                         Defendants.                         San Francisco, California  94102
17                                           Judge:         Hon. James Donato

18                                           Complaint filed:   July 13, 2017
                                             FAC filed:         July 12, 2018
19                                           Trial date:        April 6, 2020

20

21

22

23

24

25

26

27

28

1  RANDALL B. AIMAN-SMITH (Cal. State Bar No. 124599)
   REED W.L. MARCY (Cal. State Bar No. 191531)
2  HALLIE VON ROCK (Cal. State Bar No. 233152)
   CAREY A. JAMES (Cal. State Bar No. 269270)
3  BRENT A. ROBINSON (Cal. State Bar No. 289373)
   AIMAN-SMITH & MARCY
4  7677 Oakport Street, Suite 1150
   Oakland, California  94621
5  Telephone:  (510) 817-2711
   Facsimile:  (510) 562-6830
6  ras@asmlawyers.com
   rwlm@asmlawyers.com
7  hvr@asmlawyers.com
   caj@asmlawyers.com
8  bar@asmlawyers.com

9  Attorneys for Plaintiffs
   Lovely Nakooka and Elva Reyes
10

11 JEFFREY D. WOHL (Cal State Bar No. 096838)
   RYAN D. DERRY (Cal State Bar No. 244337)
12 PAUL A. HOLTON (Cal State Bar No. 313047)
   PAUL HASTINGS LLP
13 101 California Street, 48th Floor
   San Francisco, California  94111
14 Telephone:  (415) 856-7000
   Facsimile:  (415) 856-7100
15 jeffwohl@paulhastings.com
   ryanderry@paulhastings.com
16 paulholton@paulhastings.com

17 Attorneys for Defendant
   Dollar Tree Stores, Inc.
18

19

20

21

22

23

24

25

26

27

28

LEGAL_US_W # 98871483.1

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES .................................................................................................. ii

I.      INTRODUCTION/SUMMARY OF ARGUMENT ................................................... 2

II.     BACKGROUND ..................................................................................................... 3

        A.      Summary of Litigation. ............................................................................... 3

        B.      Settlement Negotiations. ............................................................................. 3

        C.      Preliminary Approval of the Settlement. .................................................... 5

III.    THE SETTLEMENT ............................................................................................... 5

        A.      Settlement Class. ......................................................................................... 5

        B.      Notice Process. ............................................................................................ 5

        C.      The Gross Settlement Payment. ................................................................... 7

        D.      Payment of Settlement Shares. .................................................................... 8

                1.      Single Distribution of Settlement Shares. ....................................... 8

                2.      Second Distribution of Uncashed Settlement Shares. ...................... 9

        E.      Release by Class Members and Plaintiffs. ................................................ 11

IV.     THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL ................... 12

        A.      All Appropriate Notice of the Settlement Has Been Provided. ................. 12

                1.      The Best Practicable Notice of Settlement Has Been Provided to the Class. ....... 12

                2.      The CAFA and PAGA Notice Requirements Have Been Satisfied. ................... 12

        B.      Final Approval Standards under Rule 23. .................................................. 13

        C.      The Settlement Is Presumptively Fair Because of the Overwhelmingly Positive Response to the Settlement by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations. .................. 14

                1.      Class Members' Response to the Settlement Is Overwhelmingly Positive. ........ 14

                2.      The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues. ................................. 15

                3.      Counsel's Endorsement of the Settlement Is Entitled to Great Weight. ............. 15

                4.      The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations. ................................................................. 16

                5.      The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation. ........................... 16

                        a.      The Value of the Settlement Favors Final Approval. ............... 16

                        b.      Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members. ................................................ 18

V.      CONCLUSION ...................................................................................................... 19

LEGAL_US_W # 98871483.1

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) .......................................................................14, 16

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) .........................................................................15

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
  *Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)...........................................................................................17

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .............................................................................2, 13, 14

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980), aff'd 661 F.2d 939 (9th Cir. 1981)........................14, 16

*Ernst & Young LLP v. Morris*,
  137 S. Ct. 809 (2017*), reversed by*
  *Epic Systems Corp. v. Lewis*,
  138 S. Ct. 1612 (2018*), remanded to and vacated by*
  894 F.3d 1093 (9th Cir. 2018) .......................................................................................3

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)...................13

*Greko v. Diesel U.S.A., Inc.*,
  No. 10-cv-02576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ...............................18

*Gutilla v. Aerotek, Inc.*,
  No. 1:15-cv-00191-DAD-BAM, 2017 WL 2729864 (E.D. Cal. Mar. 22, 2017) ...............13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................14, 16, 17

*Hughes v. Microsoft Corp.*,
  No. C98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001)...................16

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .........................................................................................15

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ...........................................................................................16

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) .......................................................................................17

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*,
  671 F. Supp. 819 (D. Mass. 1987) .................................................................................14

*Mandujano v. Basic Vegetable Prods., Inc.*,
  541 F.2d 832 (9th Cir. 1976) .........................................................................................15

LEGAL_US_W # 98871483.1

# TABLE OF AUTHORITIES
## (cont'd)

*Page*

*Mora v. Harley-Davidson Credit Corp.*,
No. 1:08-CV-01453-BAM, 2014 WL 29743 (E.D. Cal. Jan. 3, 2014)..............................18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950).............................................................................................................12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004).......................................................................................15

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ...................................................................................13, 14, 17

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999).............................................................................................................14

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985).............................................................................................................12

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..............................................................................................16

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ...........................................................................................2, 14

*Thieriot v. Celtic Ins. Co.*,
No. C 10-04462 LB, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ..................................18

*Tijero v. Aaron Bros., Inc.*,
301 F.R.D. 314 (N.D. Cal. 2013) ........................................................................................16

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ................................................................................................14

**Statutes, Regulations, and Rules**

28 U.S.C. § 1715 (CLASS ACTION FAIRNESS ACT (CAFA)) ...................................................12, 13

CAL. BUS. & PROF. CODE § 17200 ...........................................................................................3, 11

CAL. CIV. CODE § 1542 ...........................................................................................................11, 12

CAL. LAB. CODE
§ 2698 (PRIVATE ATTORNEYS GENERAL ACT (PAGA)).............................................. *passim*
§ 2699(*l*)(2) ...........................................................................................................................13
§ 2699(l)(4) ...........................................................................................................................13

FED. R. CIV. P. 23 .................................................................................................................2, 13, 18

FED. R. CIV. P. 23(e) ..................................................................................................................14

FED. R. CIV. P. 23(e)(2) ..............................................................................................................2

INDUSTRIAL WELFARE COMMISSION WAGE ORDER 7-2001, § 9(A) ......................................3, 11

**Secondary Authorities**

*Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42 ..........................16

1

**NOTICE OF JOINT MOTION AND JOINT MOTION**

2

To the Clerk of Court and all interested parties:

3

PLEASE TAKE NOTICE THAT on Thursday, July 18, 2019, at 10:00 a.m., or as soon thereafter

4

as counsel may be heard, in Courtroom 11 of this Court, located at 450 Golden Gate Avenue, 19th Floor,

5

San Francisco, California 94102, before the Honorable James Donato, plaintiffs Lovely Nakooka and

6

Elva Reyes ("Plaintiffs"), on behalf of themselves and the class previously certified by the Court for

7

purposes of the settlement (the "Class"), and defendant Dollar Tree Stores, Inc. ("Dollar Tree")

8

(collectively, the "Parties"), will and hereby jointly do move the Court to grant, pursuant to Rule 23,

9

Federal Rules of Civil Procedure, final approval of the Parties' Revised Settlement Agreement (the

10

"Settlement") (ECF 36-1, ¶ 22, Exh. A), and entry of judgment in accordance with the Settlement.

11

The Parties make this motion on the grounds that the Settlement, which was reached after arm's-

12

length negotiations by counsel for Plaintiffs and the Class and counsel for Dollar Tree, is fair and

13

reasonable, has drawn an overwhelmingly favorable response from the Class (indeed, not a single

14

objection to the Settlement was made), and should be given final approval by the Court for all the

15

reasons set forth in the memorandum in support of the motion.

16

The motion is based on this notice of motion and motion; the following memorandum in support

17

of the motion; the accompanying declarations of Amy Tadewald, Reed W.L. Marcy and Jeffrey D. Wohl

18

in support of this motion; the proposed form of Order Granting Final Approval of Class Action

19

Settlement and Entering Final Judgment; all matters of which the Court may take notice; and any oral

20

and documentary evidence presented at the hearing on the motion.

21

///

22

///

23

///

24

///

25

///

26

///

27

///

28

///

## MEMORANDUM IN SUPPORT OF JOINT MOTION

### I.    INTRODUCTION/SUMMARY OF ARGUMENT

The Parties' settlement of this wage-and-hour class action (the "Settlement") meets the criteria for final approval. The Settlement fairly resolves Plaintiffs' claims that Dollar Tree violated California wage-and-hour laws by failing to reimburse Plaintiffs and Class Members for the cost of the clothing they wore to work. The Settlement is the product of arm's-length negotiations by experienced counsel, after significant investigation, and recognition of the strengths and weaknesses of each side's positions. The Settlement has received the overwhelming support of the Class, with not a single objection to the Settlement made.

The Settlement, in the amount of $1,350,000, readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically:

- Class Counsel (who are highly experienced handling complex wage-and-hour class and collective actions) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action before agreeing to the Settlement. (Marcy Decl., ¶ 6.)

- The Settlement is consistent with the strengths and weaknesses of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- The Class responded overwhelmingly favorably to the Settlement. (Marcy Decl., ¶ 13.) The Settlement Administrator only received 7 complete and timely opt-out requests out of the 69,263 Class Members who received notice of the Settlement—resulting in an opt-out rate of approximately 0.01%. (Tadewald Decl., ¶ 14(b).) Furthermore, while one Class Member filed an "objection," it was not an objection to the Settlement; it was an objection to the lawsuit itself, based on her statement that she is "not required to purchase a 'true' uniform to wear to work" and that "this case is totally without merit." (ECF 45.)

Thus, the Parties respectfully submit that final approval of the Settlement should be granted and judgment entered accordingly.

LEGAL_US_W # 98871483.1

## II.    BACKGROUND

### A.    Summary of Litigation.

This is a wage-and-hour class action for failure to indemnify business expenses brought on behalf of non-exempt Dollar Tree employees. Specifically, Plaintiffs allege that (i) Dollar Tree had a policy requiring store employees to wear a green, collared shirt and black pants; (ii) this purportedly required clothing constitutes a uniform under California law; and (iii) Dollar Tree violated California law by failing to reimburse employees for the cost of the clothing. (ECF 1.) Filed July 13, 2017, Plaintiffs' original complaint asserted four claims for relief under the California Labor Code; Industrial Welfare Commission Wage Order 7-2001, section 9(A); and California Business and Professions Code section 17200 for failure to indemnify for clothing expenses. (ECF 1.) Through the operative First Amended Complaint, filed July 12, 2018, Plaintiffs added a claim for civil penalties with respect to all allegedly aggrieved employees under the California Labor Code Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.* (ECF 23.)

Dollar Tree denies Plaintiffs' allegations in their entirety, denies any liability or wrongdoing of any kind associated with the claims alleged in this action, and further denies that, for any purposes other than settling this action, class treatment is appropriate. In particular, Dollar Tree denies that it required employees to wear their own green shirts, and instead allowed employees to wear white shirts and a green vest or apron provided by Dollar Tree. Dollar Tree also contends that a white shirt and black pants do not constitute a reimbursable uniform under California law.

### B.    Settlement Negotiations.

As described in the Parties' Joint Motion for Preliminary Approval of Revised Proposed Settlement, the Settlement was only reached after a lengthy negotiation process. (*See* ECF 36.)

On February 19, 2018, while the case was stayed,[1] the Parties participated in a full-day mediation

---

[1]    On September 15, 2017, the Court stayed this action pending the U.S. Supreme Court's decision in *Ernst & Young LLP v. Morris*, 137 S. Ct. 809 (2017), *reversed by Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), *remanded to and vacated by* 894 F.3d 1093 (9th Cir. 2018), pursuant to the Parties' stipulation. (ECF 15, 16.) Based on the Supreme Court's decision, about half of the Class could not have been part of the class if the matter had been litigated due to their arbitration agreements. However, for purposes of the Settlement, those individuals are part of the Class. The stipulation also provided that once the stay was lifted, Plaintiffs could amend their complaint to add a claim under PAGA based on their notice to the California Labor and Workforce Development Agency ("LWDA"). (*Id.*) The Court lifted the stay, at the parties' request, on July 6, 2018. (ECF 18, 21.)

with Antonio Piazza.  (ECF No. 19-1, ¶ 11.)  However, at the conclusion of the mediation, the Parties remained too far apart.  Mr. Piazza requested the Parties allow him some time to arrive at an appropriate mediator's proposal, which he issued on February 23, 2018.  All Parties tentatively accepted the mediator's proposal.  The Parties then worked to finalize the details of a settlement, which were contained in a settlement agreement fully executed on June 19, 2018.  (ECF 19-1, ¶ 12, Exh. A.) Among other things, the original settlement provided for a Maximum Settlement Amount of $900,000; a Class Representative Service Payment of $1,000 for each Plaintiff; a Class Counsel's Fees and Expenses Payment of up to $240,000; and an expected per-Class Member Settlement Share of $8.80.  (*Id.*)

On July 2, 2018, the Parties filed (i) a stipulation to lift the stay to allow the filing of an amended complaint and a motion for preliminary approval of settlement, and (ii) a joint motion for preliminary approval of the proposed settlement.  (ECF 18, 19.)  On July 12, 2018, after the Court granted the Parties' stipulation lifting the stay, Plaintiffs filed their First Amended Complaint, adding the claim for relief under PAGA pursuant to the parties' stipulation.  (ECF 21, 23.)

On August 23, 2018, the Court denied preliminary approval of the original settlement.  (ECF 30.) In denying preliminary approval, the Court identified seven areas of concern:  (i) the total settlement value; (ii) the language of the class release was "worded in a way that makes it potentially far broader" than the uniform claim at issue in the operative complaint; (iii) the estimated settlement administration costs; (iv) unclaimed funds should be distributed to claimants in a second round of checks before being submitted to a *cy pres* recipient; (v) settlement "[c]lass members should have at least 75 days to object and/or opt out of the settlement, and 180 days to cash their checks[;]" (vi) the attorneys' fees percentage of the total settlement value; and (vii) the amount of the plaintiffs' incentive payments.  (*Id.*)

Following the Court's order denying preliminary approval of the original settlement, the Parties re-engaged in arm's-length negotiations.  At all times, the Parties' negotiations were adversarial and non-collusive.  (Marcy Decl., ¶ 9.)  By agreement executed by all Parties on October 15, 2018, the Parties agreed to a revised settlement (the Settlement), intending to address the Court's previously articulated concerns.  (*See* Settlement, § IV.)  For example, as to the total settlement amount, Dollar Tree agreed to pay $1,350,000, an increase of 50% from the prior settlement.  (Settlement, § III.A.) Plaintiffs' counsel agreed to request a lower attorney fee of $200,000, and reduced the named incentive

compensation requested to $750 per plaintiff. (*See* Settlement, §§ III.C.1-2; ECF 46-1, ¶¶ 3, 7, 10, 13, 36.)

### C.    Preliminary Approval of the Settlement.

During the hearing on the Parties' motion for preliminary approval of the Settlement on December 13, 2018, the Court granted preliminary approval of the Settlement, but ordered the parties to submit a revised proposed order and schedule. (ECF 42.) The Parties did so. (ECF 43.) On December 19, 2018, the Court entered its order which, among other things, conditionally certified the Class, ordered that the Class be sent notice of the Settlement, and set a schedule for final approval. (ECF 44.) In its order, the Court found that the Settlement "falls within the range of possible approval as fair, adequate and reasonable," as it "appears to be the product of arm's-length and informed negotiations" between the Parties, and appears "to treat all Class Members fairly." (*Id.*, ¶ 2.)

## III.    THE SETTLEMENT

The following is a summary of the material elements of the Settlement.

### A.    Settlement Class.

Pursuant to the Settlement terms and the Court's order granting preliminary approval, the following Class was certified:

> All non-exempt hourly store employees employed by Dollar Tree Stores, Inc., in California, during the period from July 13, 2013, to December 13, 2018, and excluding those individuals who already have resolved the claims asserted in this Action, whether by settlement or adjudication.

(ECF 44, ¶ 4.) There are a total of 72,269 current and former employees in the Class. (Tadewald Decl., ¶ 11.)[2]

### B.    Notice Process.

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement. (ECF 44.) The Parties implemented the Court's directions in this regard.

After obtaining quotes from a number of claims administrators (ECF 36-1, ¶ 17), the Parties

---

[2]    Between August and October 2018, when they were soliciting settlement administration bids and preparing the motion for preliminary approval, the Parties estimated (by extrapolating from historic data) that the Class consisted of approximately 64,151 current and former employees. (*See* ECF 36-1, ¶ 24.) The Class size through the end of the Class Period, due to new and seasonal hires, increased to 72,269. (Tadewald Decl., ¶ 9.)

selected, and the Court approved, Rust Consulting, Inc. ("Rust"), to administer the Settlement. (ECF 44, ¶ 10.) Amy Tadewald with Rust was the designated Senior Project Manager for the administration of the Settlement. (Tadewald Decl., ¶ 1.)

On or about December 14, 2018, counsel for Dollar Tree provided Rust with text for the Class Notice and the Notice of Proposed Class Action Settlement and Final Approval Hearing. (Tadewald Decl., ¶ 8.) A draft of the formatted documents, in English and Spanish, was prepared by Rust and approved by the Parties. (*Id.*, ¶¶ 6, 8.) Attached as Exhibit A to the Tadewald Declaration is a copy of the final Class Notice and Notice of Proposed class Action Settlement and Final Approval Hearing. (*Id.*)

On or about February 4, 2019, counsel for Dollar Tree provided Rust with a mailing list containing each of the 72,269 Class Members' name, employee identification number, last known address, and Social Security number (the "Class Members' Data"). (Tadewald Decl., ¶ 9.)

The mailing addresses contained in the Class Members' Data were processed and updated by Rust using the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service. (Tadewald Decl., ¶ 10.) The NCOA contains requested changes of address filed with the U.S. Postal Service. (*Id.*) In the event that any individual had filed a U.S. Postal Service change of address request, Rust used the address listed with the NCOA when mailing Class Notices. (*Id.*)

On February 19, 2019, Rust mailed Class Notices to all Class Members via first-class mail. (Tadewald Decl., ¶ 11.) The Class Notices informed Class Members that they could submit an election not to participate in the Settlement or objection to the Settlement postmarked by May 6, 2019. (*Id.*)

Of the Class Notices mailed, 7,998 were returned on or before May 6, 2019, as undeliverable. (Tadewald Decl., ¶ 12.) Rust performed address traces for each of these Class Members. (*Id.*) The address trace uses the Class Member's name, last-known address and Social Security number to locate a current address. (*Id.*) Of the 7,998 traces performed, Rust located updated addresses for 6,653 Class Members and promptly re-mailed Class Notices to those Class Members via first-class mail. (*Id.*) Rust did not locate updated addresses for the other 1,345 Class Members. (*Id.*) Of the 6,653 re-mailed Class Notice Packets, 1,661 Class Notices were returned to Rust as undeliverable a second time. (*Id.*) Thus, 3,006 Class Notices (approximately 4% of the total) were undeliverable. (*Id.*)

Rust received ten elections not to participate in the Settlement. (Tadewald Decl., ¶ 14.) Of

those, five were complete and included the last four of the Class Members' Social Security numbers—as required in the Settlement and stated in the Class Notice. (*Id.*) The remaining five exclusion forms did not include the last four of the Class Members' Social Security numbers. (*Id.*) Rust mailed those five Class Members a cure letter, requesting they re-submit a request for exclusion containing the last four of their Social Security numbers, as required. (*Id.*) Only two corrected the deficiency. (*Id.*). Thus, out of the ten exclusion forms received, seven were deemed valid and three were deemed invalid. (*Id.*)

Rust also was contacted by sixteen individuals who were not included in the Class list but who requested inclusion in the Class. (Tadewald Decl., ¶ 16.) After Rust requested that these individuals provide documentation of their employment, only one responded by submitting a portion of a paystub from an unidentifiable employer. (*Id.*; Declaration of Jeffrey D. Wohl in Support of Joint Motion for Final Approval of Proposed Class Action Settlement ("Wohl Decl."), ¶ 7, Exhs. A, B).) The information received from this individual was forwarded to Dollar Tree for research to determine if he should be included in the Class. Dollar Tree investigated the matter and found that no current or former employee matched the individual's name or Social Security number, and therefore he was not included in the Class. (*Id.*, ¶ 8.)

Rust did not receive any objections to the Settlement. (Tadewald Decl., ¶ 15.) One Class Member submitted an "objection" directly to the Court, but did not object to the Settlement. Instead, the Class Member objected to the action itself, stating that she is "not required to purchase a 'true' uniform to wear to work" and that "this case is totally without merit." (ECF 45.)

**C.    <u>The Gross Settlement Payment.</u>**

The Settlement creates a non-claims-made, non-reversionary common fund of $1,350,000 (the "Maximum Settlement Amount"). (Settlement, § III.A.) After deducting (i) the Class Representative Service Payments to the two named Plaintiffs in the amount of $750 each; (ii) the Class Counsel's Attorneys' Fees and Expenses Payment of $214,104 (less than 16% of the Maximum Settlement Amount); (iii) the payment to the LWDA of $18,750 as its share of the settlement of PAGA penalties; and (iv) the payment to the Settlement Administrator, the remainder of the Settlement will be distributed as Settlement Shares to the Class Members whose mailing address was confirmed by the Settlement Administrator and who have not opted-out of the Settlement (the "Net Settlement Amount").

1  (Settlement, § III.B-C.)  The Settlement Administration costs will amount to $120,000 for a single-

2  distribution.  (Tadewald Decl., ¶ 17.)[3]  Thus, after all Court-approved deductions from the Maximum

3  Settlement Amount, the Net Settlement Amount remaining for the distribution of funds to Class

4  Members will total $995,646.

5  **D.   Payment of Settlement Shares.**

6  The Parties agreed to several Settlement provisions designed to maximize each Class Member's

7  Settlement Share.  Key among these provisions is that the Court will decide whether to order a second

8  distribution of funds that remain uncashed after the first mailing of checks.[4]

9  **1.   Single Distribution of Settlement Shares.**

10  The Settlement provides that the Settlement Administrator will issue checks that reflect an equal

11  distribution of the Net Settlement Amount to all Class Members (i) whose addresses were confirmed

12  during the notice period, and (ii) who did not elect to opt out of the Settlement.  (Settlement, § III.B.3-

13  4.)  First, pursuant to the Settlement, rather than sending out undeliverable checks, the Settlement

14  Administrator will distribute Settlement Shares equally to all Class Members whose mailing addresses

15  were confirmed during the notice period.  (*Id.*, § III.B.4.)  The purpose of this provision is to reduce the

16  number of undeliverable checks, uncashed funds and postage-waste in futile mailings, while maximizing

17  the recovery of Class Members who will successfully receive a check.  Second, Class Members who

18  opted to exclude themselves from the Settlement will not be included with Class Members counted for

19  the calculation of Settlement Shares.  (*Id.*, § III.B.3.)

20  Here, the Settlement Administrator was unable to deliver Class Notices to 3,006 Class Members

21  (approximately 4% of Class Members).  (Tadewald Decl., ¶ 12.)  The Settlement Administrator also

22  received seven complete and timely requests for exclusion (approximately 0.01% of Class Members).

---

23
24  [3]   Due to the increase in the size of the Class between the initial estimate and the final number through the end of the Class Period, as well as unexpected increases in address traces and re-mails, data

25  preparation, and project management, the costs associated with administration of the settlement increased proportionately from the original estimate, $99,962 to $120,000. (ECF 36-1, ¶ 17; Tadewald

26  Decl., ¶ 17.)  If the Court orders a second distribution of funds remaining uncashed following the first distribution, the estimated cost for that second distribution is $49,838.  (*Id.*, ¶ 18.)  However, the final expense will be dependent on the percentage of checks that remain uncashed to be distributed.

27  [4]   Any portion of the Net Settlement Amount not cashed by Class Members will be paid to Dress for Success, or another charity mutually agreed upon by the Parties and approved by the Court.

28  (Settlement, § III.E.10.)

(*Id.*, ¶ 14(a).)  Accordingly, the recovery for the 69,256 Class Members who did not opt out and whose addresses were confirmed would equal $14.38 per person, approximately $0.60 more per Class Member than he or she would receive if all 72,269 Class Members were mailed a check.[5]  Settlement Shares are calculated as follows:

| Settlement Shares If Only One Distribution | |
|---|---:|
| Maximum Settlement Amount | $1,350,000 |
| Less Class Representative Payments | $      1,500 |
| Less Class Counsel Fees and Expenses Payment | $   214,104 |
| Less LWDA Payment | $    18,750 |
| Less Settlement Administrator's Fees | $   120,000 |
| Net Settlement Amount | $   995,646 |
| Class Members | 69,256 |
| **Settlement Share** | **$      14.38** |

As explained in section IV.C.5, *infra*, the Settlement Share constitutes a fair and reasonable sum.[6]

## 2.   Second Distribution of Uncashed Settlement Shares.

The Settlement also authorizes the Court to decide whether a second distribution of uncashed funds is appropriate.  (Settlement, § III.E.10.)  Under this scenario, any money remaining in the Net Settlement Amount after the check-cashing period expires will be allocated equally to all Class Members who cashed their first check and receive an additional pro-rata distribution.

Here, Rust has bid the cost of a second distribution of settlement checks at $49,838.  (Tadewald Decl., ¶ 18.)  Merely for illustration, Rust also reports that, in a prior Dollar Tree opt-out wage-and-hour settlement, 26% of the settlement class did not cash their settlement checks.  (*Id.*, ¶ 19.)  If the same percentage of Class Members do not cash the checks received in the first disbursement here, after administration costs, the second distribution of funds to Class Members would equal approximately

---

[5]     The total number of Class Members who will receive a Settlement Share is 69,256, calculated as follows:  72,269 (total Class Members) – [3,006 (total Class Members with unconfirmed addresses) + 7 (total Requests for Exclusions deemed valid)] = 69,256.

[6]     While the Parties originally estimated that Settlement Shares would equal "approximately $15.81" (ECF 36-1, ¶¶ 13, 26, 30), an increase in Class Members has resulted in a slight reduction to that original estimate.  However, as discussed more fully in section IV.C.5, *infra*, $14.38 is still fair and reasonable.  And if the Court adopts the second-distribution option, the Settlement Shares will surpass the original $15.81 estimate.

$4.08 per Class Member, making the total Settlement Share approximately $18.46.

| Estimated Second-Distribution Settlement Share (If 26% Uncashed) | |
| --- | --- |
| Class Members | 69,256 |
| Uncashed % | 26% |
| Number Uncashed | 18,006 |
| Dollars Uncashed | $258,868 |
| Less Second-Distribution Settlement Administration Fee | $ 49,838 |
| Net to be Redistributed | $209,030 |
| Number to be Redistributed | 51,249 |
| **Net Redistribution Per Class Member** | **$   4.08** |
| **Total Per Class Member** | **$ 18.46** |

Even if the check-cashing rate in this Settlement does not meet or surpass that of prior Dollar Tree settlements, a redistribution may still be worthwhile.  For example, if fifteen percent of the Class does not cash the first check, the second distribution of funds to Class Members would equal approximately $1.69 per Class Member, making the total Settlement Share approximately $16.07.

| Estimated Second-Distribution Settlement Share (If 15% Uncashed) | |
| --- | --- |
| Class Members | 69,256 |
| Uncashed % | 15% |
| Number Uncashed | 10,388 |
| Dollars Uncashed | $149,347 |
| Less Second-Distribution Settlement Administration Fee | $ 49,838 |
| Net to be Redistributed | $ 99,509 |
| Number to be Redistributed | 58,867 |
| **Net Redistribution Per Class Member** | **$   1.69** |
| **Total Per Class Member** | **$ 16.07** |

Assuming final approval, the Parties respectfully submit that the Court has three options regarding a second distribution:

- First, the Court can order that any uncashed funds, so long as they exceed the estimated administration costs, will be redistributed to all Class Members who cashed their first check.

- Second, the Court can order that a second distribution should take place as long as the uncashed check percentage reaches a particular threshold percentage (*e.g.*, 15%), in

1    excess of the estimated administration costs for a second mailing of checks.

2    ▪    Third, the Court can order the Parties to file, within a certain number of days following

3    the check-cashing deadline, an update from the Settlement Administrator indicating the

4    number and percentage of uncashed checks and the Parties' recommendation regarding

5    a second distribution.  At that time, the Court could then determine whether to order a

6    second distribution or order the uncashed funds to a *cy pres* recipient.

7    **E.    Release by Class Members and Plaintiffs.**

8    In exchange for the Maximum Settlement Amount, Class Members will release, from July 13,

9    2013, up to the date of final approval, Dollar Tree and each of its former and current parent companies,

10    subsidiaries, and affiliated corporations and entities, and each of their respective former and current

11    employees, officers, directors, agents, attorneys, shareholders, fiduciaries, other service providers, and

12    related persons and entities, and assigns (the "Dollar Tree Released Parties") from any and all known

13    and unknown claims based on the allegation that Dollar Tree requires employees to wear prescribed

14    clothing at work without reimbursement.  These claims include, but are not limited to, the claims

15    asserted by plaintiffs in the action under (1) the California Labor Code; (2) Industrial Welfare

16    Commission Wage Order 7-2001, section 9(A); (3) California Business and Professions Code

17    section 17200 *et seq.* (the "UCL"); and (4) PAGA (collectively, the "Class Members' Released

18    Claims").  (Settlement, § III.F.2.)  The language regarding the Class Members' Released Claims is

19    express that the claims released are only those based on the allegations and claims made in the First

20    Amended Complaint.  The proposed release provides that Class Members agree to a waiver of rights

21    under California Civil Code section 1542 only as to those specified claims.  (*Id.*, § III.F.4.)

22    The named Plaintiffs have agreed to a broader release than the Class Members' Released Claims,

23    releasing all known and unknown claims they have or may have against the Dollar Tree Released

24    Parties, of every nature and description whatsoever, up to the date the Court's approval of the Settlement

25    Agreement is Final.  (Settlement, §§ III.F.1-2.)  This general release of claims includes any and all

26    known or unknown contract, tort, statutory, common law, constitutional, discrimination, public policy,

27    retaliation, wrongful discharge and other claims of any type whatsoever, to the fullest extent such claims

28    are releasable by law, arising out of Plaintiffs' employment with Dollar Tree.  (*Id.*)  Plaintiffs agreed to a

-11-

general waiver of their rights under California Civil Code section 1542 to not release any unknown claims, as well as to waive any right to future employment with Dollar Tree. (*Id.*, §§ III.F.1, 4.)

## IV.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

### A.    All Appropriate Notice of the Settlement Has Been Provided.

#### 1.    The Best Practicable Notice of Settlement Has Been Provided to the Class.

The mailing of the Class Notice to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of Class Members. (ECF 44; *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of litigation and explanation of opt-out rights satisfies due process). Indeed, individual Class Notice was served on each Class Member at his or her most recent address, after cross-referencing each address with U.S. Post Office records; Class Members also were directed to a dedicated website that included the Notice of Proposed Class Action Settlement and Final Approval Hearing and other Settlement-related information. Moreover, both the Class Notice and Notice of Proposed Class Action Settlement and Final Approval Hearing informed Class Members of the pendency of the action and their right not to participate in the Settlement. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"). Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval process.

#### 2.    The CAFA and PAGA Notice Requirements Have Been Satisfied.

Although there is no governmental participant in this case, pursuant to 28 U.S.C. section 1715 (the Class Action Fairness Act ("CAFA")), Dollar Tree provided notice of the Settlement to the Office of the Attorney General for the United States and the Office of the Attorney General for the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey,

New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, Wisconsin, Wyoming, as well as the District of Columbia, all the jurisdictions where Class Members are known to reside.  (ECF 39, ¶¶ 3-8, Exh. B.)  "[A]lthough CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures."  *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010).  To date, no federal or state official has raised such concerns.  (Wohl Decl., ¶ 5.)

In addition, pursuant to PAGA, Cal. Lab. Code § 2699(*l*)(2), (4), Dollar Tree submitted the proposed settlement to the LWDA through its online portal.  (ECF 38, ¶ 3.)  The LWDA has not commented on or objected to the settlement.  (Wohl Decl., ¶ 4.)  Accordingly, the Parties' submission is satisfactory under PAGA.  *See, e.g., Gutilla v. Aerotek, Inc.*, No. 1:15-cv-00191-DAD-BAM, 2017 WL 2729864, at *3 (E.D. Cal. Mar. 22, 2017) (after reviewing parties' submission of proposed settlement to LWDA, finding PAGA settlement "fair, reasonable, and adequate in light of the public policy goals of PAGA").

This lack of governmental objection to the Settlement further supports final approval.

**B.     Final Approval Standards under Rule 23.**

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [...] favors settlements, particularly where complex class action litigation is concerned").  On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'"  *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.  The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel [...] and the reaction of the class members to the proposed settlement." *Id.*; *see also Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).  "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

### C. The Settlement Is Presumptively Fair Because of the Overwhelmingly Positive Response to the Settlement by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations.

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that not a single Class Member objected to the Settlement, (2) the meaningful discovery conducted, (3) Class Counsel's significant experience in this kind of litigation, and (4) the arm's-length negotiations before an experienced mediator.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are *prima facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair.").  These factors are well satisfied here.

#### 1. Class Members' Response to the Settlement Is Overwhelmingly Positive.

Out of 72,269 Class Members, not a single Class Member objected to the Settlement.  Indeed,

while one Class Member filed an "objection," she was "object[ing] to this class action lawsuit"—not the Settlement. (ECF 45.) The Class Member filed an objection challenging the notion that Dollar Tree employees have to "purchase a 'true' uniform to wear to work," stating: "this case is totally without merit." (ECF 45.) Thus, this "objection" is not an objection in the typical sense. And, even if it were, a single objection out of 72,269 Class Members indicates a favorable class reaction. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) (holding that in "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action[s] are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods., Inc*., 541 F.2d 832, 837-38 (9th Cir. 1976).

Moreover, only seven Class Members—0.01%—opted out of the Settlement.

This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement. *See Chun-Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (finding opt-out rate of 16 of 329 class members (approximately 4.8%) low, and explaining that where exclusions and opt-outs are low, there is presumption of favorable class reaction).

### 2.    The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.

The Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery) (citation omitted). Before any mediation, Class Counsel reviewed hundreds of pages of documents produced by Dollar Tree; interviewed Class Members and potential opt-in plaintiffs regarding their job duties, hours worked, and other relevant information; and analyzed detailed, individualized class member data to prepare a comprehensive damage analysis. (Marcy Decl., ¶¶ 5-6.) The Parties also spent significant time preparing for and taking part in mediation.

### 3.    Counsel's Endorsement of the Settlement Is Entitled to Great Weight.

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18. Reliance on such

recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiffs' Counsel and Dollar Tree's Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one. (Marcy Decl., ¶¶ 4, 15-16; Wohl Decl., ¶¶ 2-3.) The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 4.    The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations.

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42).

The Parties engaged in a lengthy, day-long mediation, only reached an initial agreement following a mediator's proposal made four days after the mediation, and subsequently engaged in further negotiations in the fall of 2018. (Marcy Decl., ¶¶ 6-9.) Before the mediation, the Parties submitted extensive mediation briefing, including detailed data analyses and assessments, and substantial evidence. (*Id.*, ¶¶ 5-6.)

### 5.    The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.

#### a.    The Value of the Settlement Favors Final Approval.

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of

-16-

absolutes and an abandoning of highest hopes [...]  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation[.]"  *Officers for Justice*, 688 F.2d at 624 (citations omitted).  Accordingly, the "settlement is not to be judged against a […] speculative measure of what *might* have been achieved."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted).  In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.  *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement—$1,350,000—is a fair and reasonable result, especially in light of the defenses raised by Dollar Tree, including defenses based on Plaintiffs' inability to identify a uniform policy or practice that caused injury to the Class; Plaintiffs' inability to proceed on a class-wide basis because half the Class executed an arbitration agreement as a condition of hire; and the propriety of class and collective certification as it relates to the remaining putative class members who did not execute an arbitration agreement.  (Marcy Decl., ¶¶ 14-16.)

Moreover, the Settlement Share amount represents a meaningful recovery for Class Members. Class Members worked, on average, about 2.5 shifts per week over six months total.  (ECF 36-1, ¶ 29.) Thus, even assuming *arguendo*, that a Class Member needed to purchase a green *or* white shirt to meet Dollar Tree's dress options, he or she would not have needed a large number of shirts.  If one were to assume a Class Member would want a clean shirt for every shift and would perform weekly laundering, that would be an average of two to three shirts.  If worn only once a week, it is reasonable to assume the same shirts could be used throughout the average six-month tenure.

As submitted previously, the anticipated Settlement Share, under either distribution scheme, would be sufficient to purchase these two to three shirts.  (*See* ECF 36-2, ¶¶ 3-7, Exhs. A-M (listing current prices for men's and women's white and green polo shirts at Amazon, Kmart, and Walmart at

between $3.97 and $7.99; indeed, a green Dollar Tree logoed polo shirt (unisex) can be purchased for $9.90).)

Accordingly, the $1,350,000 Maximum Settlement Amount is well within the range of reasonableness, as the estimated recovery for each Class Member is equivalent to reimbursement for a reasonable value of approximately two to three shirts.

> **b.**     **Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.**

When a party continues to deny liability, there is an inherent risk in continuing litigation.  In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation.  *See also Mora v. Harley-Davidson Credit Corp.*, No. 1:08-CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …").

Similarly here, Dollar Tree continues to contest liability and the propriety of class certification. Dollar Tree's absolute denial of liability, paired with its diligent opposition to class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement.  (Marcy Decl., ¶¶ 14-16.)

Moreover, this Rule 23 California class action involves intricate legal and factual questions. Litigating these complex claims would require substantial additional discovery and pre-trial motions (including motions for certification and decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence.  (Marcy Decl., ¶ 14.)  Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues.  (*Id.*)  Once liability had been established on a class-wide basis, Class Members might be required to testify at individual damages mini-trials.  (*Id.*)  As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay.  (*Id.*)  In contrast, the Settlement

will yield a prompt, certain, and substantial recovery for the Class Members. Such a result benefits the Parties and the court system.

Finally, because approximately half of the Class would be subject to exclusion because of their enforceable arbitration agreements with Dollar Tree (*see* section IV.C.5.a., *supra*), the Settlement delivers substantial value to them as part of the Settlement Class.

## V.    **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court grant final approval of the Settlement.

Dated: June 12, 2019.

RANDALL B. AIMAN-SMITH
REED W. L. MARCY
HALLIE VON ROCK
CAREY A. JAMES
BRENT A. ROBINSON
AIMAN-SMITH & MARCY

By:    */s/ Reed W. L. Marcy*
Reed W. L. Marcy
Attorneys for Plaintiffs
Lovely Nakooka and Elva Reyes

Dated: June 12, 2019.

JEFFREY D. WOHL
RYAN D. DERRY
PAUL A. HOLTON
PAUL HASTINGS LLP

By:    */s/ Jeffrey D. Wohl*
Jeffrey D. Wohl
Attorneys for Defendant
Dollar Tree Stores, Inc.

### **Attestation Pursuant to Local Civil Rule 5-1(i)(3)**

Pursuant to Local Civil Rule 5-1(i)(3), I attest that concurrence in the filing of the document has been obtained from all signatories to this filing. I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 12, 2019.

*/s/ Jeffrey D. Wohl*
Jeffrey D. Wohl

LEGAL_US_W # 98871483.1